**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

MICHAEL JOSHUA HENDERSON,

        Plaintiff,

        v.                                        No. 9:13-CV-1537 (MAD/CFH)

LEBERTUS VANDERWERFF, et al.,

        Defendants.

---

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                     **OF COUNSEL:**

Michael Henderson
Plaintiff Pro Se
06-A-5461
Attica Correctional Facility
P.O. Box 149
Attica, NY 14011

HON. ERIC T. SCHNEIDERMAN        RYAN E. MANLEY, ESQ.
Attorney General for the               Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 1224-0341

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Michael Joshua Henderson, an inmate currently in the custody of Attica Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants, who at all relevant times were correctional officers at Auburn Correctional

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3 (c).

Facility ("Auburn"), violated his rights under the First Amendment of the Constitution of the United States. On December 24, 2014, the Court issued a Decision and Order dismissing: (1) with prejudice plaintiff's claims against defendants in their official capacity as barred by the Eleventh Amendment; (2) without prejudice plaintiff's claims against defendants Fisher, Graham, and Dennis as duplicative of prior claims; and (3) without prejudice all remaining claims, excluding specified claims against defendants Vanderwerff, Dine, Wright, Hodson, and Chuttey. See Dkt. No. 5. On March 27, 2015, the remaining defendants, excluding defendant Dine, moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Dkt. No. 22. On April 17, 2015, plaintiff filed a response in opposition to defendants' motion to dismiss. Dkt. No. 27.

**I. Background**

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II(A) infra. At all relevant times, plaintiff was an inmate at Auburn. Compl. ¶ 6-99.

Plaintiff alleges that, on March 22, 2012, Officer Robin E. Richardson instructed him to pull his pants up, that he complied, but that Richardson accused him of disobeying that order. Compl. ¶ 6. As a result of the alleged disobedience, Officer Richardson directed plaintiff to dispose of his remaining breakfast and performed a pat-down on him. Id. The pat-down did not reveal any contraband. Id. Plaintiff's subsequent request for a replacement meal was denied, which motivated him to call his mother and ask her to file a complaint against Officer Richardson alleging that he harassed him and denied him food. Id.

2

While attending his work program at the law library on March 22, 2012, plaintiff recounted the morning's events to Officer Lebertus Vanderwerff, the law library supervisor. Compl. ¶ 6. Officer Vanderwerff responded by stating, "Richardson, that's my boy," and offered to "put out all the fires" for plaintiff. Id. In return, plaintiff volunteered to withdraw the grievance. Id. However, plaintiff's mother, on plaintiff's behalf, unsuccessfully attempted to withdraw the grievance. Id.

Plaintiff alleges that, on March 26, 2012, Officer Michael N. Ramsey[2] informed him that Officer Vanderwerff "told [Ramsey] not to let [plaintiff] out for work today . . . ." Compl. ¶ 8. Plaintiff was kept from his work program until March 29. Id. ¶ 8-11. Upon plaintiff's return to the law library, Officer Vanderwerff instructed plaintiff to write to the program committee and request a thirty-day leave of absence. Id. ¶ 12. Officer Vanderwerff told plaintiff that "[he] can't have [plaintiff] working here." Id. Officer Vanderwerff stated that "[Officer] Richardson is my boy and a lot of officers have a problem with [plaintiff] now . . . because of the complaint [plaintiff] filed in Albany against . . . Richardson." Id. (internal quotation marks omitted). In response, plaintiff explained that a court deadline was approaching and such an absence from the law library would negatively affect the proceeding. Id. Richardson told him he would still be permitted to visit the law library to work on his legal matters. Id. After speaking to a "coworker" who overheard this conversation, plaintiff "took his coworkers [sic] advice" and declined to write to the program committee. Id.

Plaintiff alleges that, on the morning of May 14, 2012, he successfully passed a

---

[2] Ramsey was terminated as a defendant in this case by the Court's December 24, 2014 Decision and Order. See Dkt. No. 5.

3

urinalysis test. Compl. ¶ 59. Later that day he learned that marijuana had been found in a coffee pot in the law library, and that there was a fabricated "snitch note" suggesting that the contraband belonged to him. Id. Plaintiff received no misbehavior report relating to the marijuana; however, he did receive a letter from Officer Chuttey notifying him that he had been removed from his position as clerk in the law library for "security reasons." Id. ¶¶ 59, 61. The letter also stated that plaintiff would be under consideration for a new program assignment in the future. Id. ¶ 61. Plaintiff wrote to Officer Chuttey, inquiring further about the reason for his termination. Id. He did not receive a response. Id. When plaintiff asked Officer Chuttey in person why he was removed from the law library work program, Officer Chuttey stated that he sent plaintiff a written response and that plaintiff "shouldn't have filed a complaint against [Officer] Richardson." Id. ¶ 66. Plaintiff admits that he has a "recent," unrelated misbehavior report resulting from a urinalysis that tested positive for marijuana. Id. ¶ 12. Plaintiff alleges that Officer Vanderwerff "played off" his record in order to remove him from the law library program. Id.

On July 14, plaintiff received another misbehavior report, which he alleges to be false, authored by Officer James T. Wright. Compl. ¶ 77. Plaintiff challenged the misbehavior report, apparently resulting in his being found not guilty of one violation. Id. However, the charge alleging that plaintiff violated Rule 121.14, Inmates Shall Not Exchange Personal Identification Numbers, was upheld. Id.

Plaintiff was placed in administrative segregation and relocated to the Secure Housing Unit ("SHU") on December 13, 2012. Compl. ¶ 93. Plaintiff received a report from Officer Hodson outlining the reasons for his removal from the general population. Id. ¶ 94. Officer Hodson's report referenced an alleged threat that plaintiff's mother made on

4

Facebook.³  Id.

## II. Discussion⁴

Plaintiff alleges that defendants violated his constitutional rights under the First Amendment.  Compl. ¶¶ 100-103.  Specifically, plaintiff argues that he engaged in constitutionally-protected speech through filing grievances, and that defendants orchestrated his removal from the law library work program, filed false misbehavior reports against him, and assigned him to administrative segregation in retaliation.  Dkt. No. 27, at 5.

### A.  Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,  570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to withstand a motion to dismiss, under Rule 12(b)(6), because such statements are not entitled to the presumption of truth.  Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  However, the court must accept all factual allegations in the complaint as true and draw "all reasonable inferences in the plaintiff's favor."  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008) (quoting Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008)) (internal quotation marks and

---

³ Plaintiff fails to explain the nature of the threat, how Officer Hodson was aware of the threat, or how plaintiff was connected to this threat.

⁴ Unpublished decisions cited within this Report-Recommendation and Order are attached.

5

citation omitted). Sufficient factual allegations must accompany a complaint's legal conclusions in order for the court to conclude that the claim to relief is plausible. Ashcroft, 556 U.S. at 670.

Pleadings drafted by pro se plaintiffs must be construed liberally and held to lesser standards than those drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Reading a pro se complaint liberally, the court must "interpret [the complaint] to raise the strongest arguments that [it] suggest[s]." Weixel v. Bd. of Educ., 287 F.3d 138, 146 (2d Cir. 2002). However, the special solicitude afforded to pro se litigants does not allow courts to read into a pleading claims that are inconsistent with the pleading's allegations, nor does it "exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).

### B. First Amendment Retaliation

Any act committed with a retaliatory intent in response to another's exercise of his or her constitutional rights is actionable under 42 U.S.C. § 1983. Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988). To state a prima facie First Amendment retaliation claim under Section 1983, a plaintiff must show that (1) the plaintiff's conduct was constitutionally-protected, (2) the defendant took adverse action against the plaintiff, and (3) there exists a causal connection between the protected conduct and adverse action. Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

It is well settled that the filing of a grievance constitutes speech or conduct

constitutionally-protected by the First Amendment and satisfies the first prong of the test. Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996). The determination of the second prong, and whether the action qualifies as adverse, turns on whether the adverse act "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Seale v. Madison County, 929 F. Supp. 2d 51, 77 (N.D.N.Y. 2013) (quoting Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006)). To establish the third prong, a plaintiff must show that the protected conduct was a "substantial" or "motivating factor" in the adverse action. Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Such causal connection can also be established by a showing that the adverse action occurred near in time to the constitutionally-protected conduct. Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (finding that a causal connection existed between the dismissal of lawsuit plaintiff filed against defendants, and an alleged retaliatory beating that occurred six months later); Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty., 252 F.3d 545, 555 (2d Cir. 2001) (holding that a causal connection can be found between protected conduct and adverse action separated by five months).

Due to the relative ease in which retaliation claims can be alleged, courts must approach such claims with "skepticism and particular care." Dawes, 239 F.3d at 491. This care includes recognizing that "in the context of prison administration . . . prison officials have broad administrative and discretionary authority." Graham, 89 F.3d at 79. A plaintiff's complaint must be "supported by specific and detailed factual allegations," rather than wholly conclusory language in order to overcome such skepticism. Friedl v. City of New York, 210 F.3d 79, 86 (2d Cir. 2001). If a plaintiff successfully establishes a prima facie

7

First Amendment retaliation claim, the burden shifts to the defendant to show that such action would have been taken against the plaintiff "even in the absence of the protected conduct." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (quoting Graham, 89 F.3d at 79) (internal quotation marks and citation omitted).

### i. Defendant Vanderwerff

Plaintiff alleges that Officer Vanderwerff retaliated against him for exercising his right to file a grievance against Officer Richardson on March 22, 2012. Compl. ¶ 12, 59. Specifically, plaintiff claims that Officer Vanderwerff planted marijuana in the law library with the intention of having plaintiff removed from the law library work program in retaliation for his filing a grievance against Officer Richardson. Id. ¶ 12.

New York law does not afford an inmate "any statutory, regulatory, or precedential right to his prison job." Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (quoting Cooper v. Smith, 63 N.Y.2d 615, 616 (N.Y. 1984)). Termination from a prison work program does not constitute an adverse act for the purposes of Section 1983 retaliation claims if the prison official had non-discriminatory reasons for dismissing the inmate from the program. Hare v. Hayden, No. 09 Civ. 3135 (RWS), 2011 WL 1453789, at *4-5 (S.D.N.Y. Apr. 14, 2011) (finding that, since the plaintiff failed to attend the work program for two weeks, acted in a disruptive manner, and demonstrated an inability to work with another individual, the defendant had non-discriminatory reasons for dismissing the plaintiff). However, if the removal is motivated by retaliation for the exercise of protected rights, a claim may be established under § 1983. Mooney, 824 F.2d at 194-95 (noting that job transfers used to harass and retaliate against a plaintiff may state a claim under section 1983, but finding that

8

the plaintiff's claims were conclusory).

The timing of the termination is one factor that aids the determination whether there is a causal connection between the protected conduct and termination. Gill v. Calescibetta, No. 00-CV-1553 (GTS/DEP), 2009 WL 890661, at *3 (N.D.N.Y. Mar. 31, 2009) (declining to dismiss the plaintiff's retaliation claim because the plaintiff's job was withdrawn soon after he had filed grievances about his working conditions); Bussey v. Phillips, 419 F. Supp. 2d 569, 585 (S.D.N.Y. 2006) (holding that the plaintiff failed to establish a causal connection because the plaintiff's filing of grievances occurred after his removal from his program). Moreover, an act of mitigation, such as offering the inmate a different prison job, suggests a lack of any adverse action or causal connection. Taylor v. Fischer, 841 F. Supp. 2d 734, 738 (W.D.N.Y. 2012) (holding that the plaintiff's loss of a particular program was not adverse "particularly since plaintiff was placed into a different job program thereafter.").

When a plaintiff files a grievance against one officer and subsequently alleges retaliatory adverse action by another officer, the plaintiff has an elevated burden for demonstrating retaliation because "it is difficult to establish one defendant's retaliation for complaints against another defendant." Guillory v. Ellis, No. 9:11-CV-600 (MAD/ATB), 2014 WL 4365274, at *18 (N.D.N.Y. Aug. 29, 2014) (citing Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009) (noting that the plaintiff's conclusory and speculative claims failed to demonstrate a causal connection between filing a grievance against one officer and another officer tampering with the plaintiff's mail, allegedly in retaliation for the grievance against the first officer); Hare, 2011 WL 1453789, at *4-5 (holding that the plaintiff "fail[ed] to establish that [the defendant] had a motive to retaliate" against him for complaints filed against

9

another corrections officer).

Here, plaintiff alleges that Officer Vanderwerff retaliated against him for filing a grievance report against Officer Richardson on March 22, 2012. Compl. ¶ 12. As filing a grievance is constitutionally-protected speech, Graham, 89 F.3d at 80, plaintiff has successfully established the first prong of a prima facie retaliation case. See id.

With respect to the second prong, plaintiff alleges that Officer Vanderwerff retaliated against him by taking actions that led to his termination from his position as a clerk in the law library. Compl. ¶ 59. Plaintiff alleges that Officer Vanderwerff understood his desire to continue to work in the law library due to his refusal to take a thirty-day leave of absence. Id. ¶ 12. Plaintiff further explained to Officer Vanderwerff that leaving would negatively affect the research he wanted to accomplish. Id. Although plaintiff has no right to his law library job, Mooney, 824 F.2d at 194, the complaint establishes that Officer Vanderwerff knew enough about plaintiff's interest in continuing in the law library work program to understand that a removal could be used to deter him from exercising his constitutional rights. Furthermore, the nondiscriminatory reason cited for plaintiff's dismissal was "security reasons." Compl. ¶ 61. Despite plaintiff's written and oral requests for more specific information regarding his dismissal, the only response he received was Officer Chuttey's statement that he should not have filed a grievance against Officer Richardson. Id. ¶ 66. Notably, plaintiff did not receive a misbehavior report, or any other form of punishment, as a result of the alleged marijuana found in the library. Id. ¶ 59. Thus, plaintiff has arguably demonstrated that he suffered an adverse action – retaliatory removal from the law library job.

However, plaintiff must still establish a nexus between the retaliation and his filing a grievance against Officer Richardson. Dawes, 239 F.3d at 492. Although it is difficult to establish retaliation for filing a grievance when the adverse action is committed by a defendant who was not the subject of the grievance, plaintiff has pleaded sufficient facts, at the motion to dismiss stage, to show a connection between Officer Vanderwerff and the subject of the grievance, Officer Richardson. First, plaintiff establishes a relationship between the two officers by alleging that Officer Vanderwerff referred to Officer Richardson as his "boy" on two separate occasions. Compl. ¶¶ 6, 12. Accompanying one of those conversations was an offer from Officer Vanderwerff to plaintiff to "put out all the fires" between plaintiff and Officer Richardson, indicating Officer Vanderwerff's relationship with Officer Richardson. Id. ¶ 6. Upon plaintiff's failure to withdraw his grievance against Officer Richardson, Officer Vanderwerff would not allow plaintiff to attend his work program. Id. ¶ 8. This allegation further lends plausibility to plaintiff's argument that Officer Vanderwerff attempted to remove plaintiff from the law library work program in retaliation for plaintiff's filing a grievance against Officer Richardson. Id. ¶¶ 12, 59. Plaintiff also alleges that Officer Vanderwerff encouraged him to take a thirty-day leave from the law library because "Richardson is [Vanderwerff's] boy and a lot of officers have a problem with [plaintiff] now." Id. ¶ 12; cf. Alicea v. May, 12-CV-203 (MAD/TWD), 2015 WL 4326114, at *14 (N.D.N.Y. July 14, 2015) (finding that the plaintiff failed to establish a causal connection between his filing a grievance against one officer and retaliation by another officer where the plaintiff admitted that he did not have a basis for his claim that the two officers had a "close personal relationship," and the defendant denied the alleged retaliatory conduct in her declaration). Additionally, plaintiff claims he was never disciplined in connection with the

11

alleged contraband incident, and that all other inmates were permitted to continue in their positions at the law library immediately following the incident, suggesting that removing him for "security reasons" may have been a pretext for his retaliatory termination.[5]  Compl. ¶ 59.

Plaintiff further demonstrates temporal proximity between the grievance and his removal from the law library work program.  Plaintiff claims that the work program termination took place less than two months after he filed the grievance against Officer Richardson.  Compl. ¶¶ 6, 61.  During the approximately two-month gap, Officer Vanderwerff had conversations with plaintiff regarding the grievance filed against Officer Richardson, the fact that the two officers were close, and the possibility of plaintiff requesting a leave of absence from the law library program.  Id. ¶¶ 6, 12.  The relative closeness in time between the protected conduct and adverse action, bolstered by the several comments Vanderwerff allegedly made to plaintiff during this time, suggest a causal connection.  Further, the job dismissal was not mitigated by placing plaintiff in a new work program.  See Taylor, 841 F. Supp. 2d at 738.  Although plaintiff received a letter from Officer Chuttey stating that he would be considered for a new work position in the future, he was not placed in another work program before his transfer to Attica on January 18, 2013.  Compl. ¶ 61-99.

At this stage, plaintiff alleges detailed facts regarding interactions between himself

---

[5] Although it is unclear whether Vanderwerff, as law library supervisor, had input in or authority over the decision to remove plaintiff from the law library work program, plaintiff's claims that Vanderwerff (1) advised corrections officers to keep plaintiff in his cell, rather than allow him to attend work; (2) told him, repeatedly, that he was friends with Officer Richardson and could not have plaintiff working in the law library; (3) told plaintiff to request a leave of absence from the work program; (4) and allegedly planted marijuana in the law library.  Plaintiff sufficiently pleads that Vanderwerff was personally involved in the decision to remove plaintiff from the work program.

12

and Officer Vanderwerff (Compl. ¶ 6-59) that raise questions of fact about plaintiff's job dismissal and its connection with a grievance filed against Officer Richardson. Thus, the burden shifts to defendant Vanderwerff to show that such action would have been taken regardless of the protected grievance filing. Defendant Vanderwerff's motion to dismiss contends that plaintiff was dismissed due to "security reasons" but does not detail these reasons nor address plaintiff's claim that all other clerks were permitted to return to the library after the contraband incident. Dkt. No. 22, at 6. As the Court is unaware what "security reasons" might mean, especially where plaintiff was not disciplined in connection with the contraband or, to the Court's knowledge, any other incident connected with his law library position, it cannot conclude that defendants have met their burden of demonstrating that plaintiff would have been removed from his law library job regardless of the grievance he filed against Officer Richardson.

Accordingly, based on the allegations raised in plaintiff's complaint, it is at least plausible that Officer Vanderwerff was involved in plaintiff's termination from his prison job and did so in retaliation for his filing a grievance against Officer Richardson. The undersigned reiterates that discovery may reveal that Officer Vanderwerff's conduct was not retaliatory or that he did not have input in the decision to remove plaintiff from the law library work program. However, on a motion to dismiss, where the court must accept as true the allegations in plaintiff's complaint, plaintiff has sufficiently pleaded enough of a causal connection between his protected filing and the Officer Vanderwerff's alleged conduct.

Accordingly, it is recommended that defendants' motion to dismiss the First Amendment retaliation claims against Officer Vanderwerff be denied.

### ii. Defendant Wright

Plaintiff alleges to have received a false misbehavior report, authored by Officer Wright, for two violations of telephone usage, and that the misbehavior report was issued in retaliation for his filing of grievances. Dkt. No. 27, at 5.

"When it is undisputed that an inmate has in fact committed prohibited conduct, no retaliatory discipline claim can be sustained." Vega v. Artus, 610 F. Supp. 2d 185, 207 (N.D.N.Y. 2009) (citing Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994) (holding that, since the plaintiff admitted to losing state-issued gloves, the defendant would have taken the adverse action of issuing a misbehavior report even in the absence of the plaintiff's grievance filing).

Plaintiff's complaint suggests that, although one violation was dropped, he was still found to have violated Rule 121.14, Inmates Shall Not Exchange Personal Identification Numbers.[6] Compl. ¶ 77. However, plaintiff admits to violating this prison rule on the preceding day when he gave his PIN numbers to his neighbor to use the phone. Id. ¶ 76. Therefore, plaintiff fails to establish a prima facie case of retaliation against Officer Wright because he admits to the wrongdoing alleged in the misbehavior report. See Vega, 610 F. Supp. 2d at 207 (noting that, where the plaintiff admitted that he lost state-issued gloves, a misbehavior report charging him with that conduct was not retaliatory).

Accordingly, it is recommended that defendants' motion to dismiss be granted insofar

---

[6] Additionally, plaintiff's complaint indicates that, "Plaintiff was subsequently found guilty of 121.14 and not guilty of 121.13. The plaintiff was subsequently found guilty of all charges." Compl. ¶ 77. Despite the contradictory nature of these two sentences, even if plaintiff were found guilty of both Rule 121.13 and 121.14 violations, his claim against Officer Wright is insufficient. Plaintiff fails to allege any specific protected conduct for which he faced retaliation. He merely provides a general statement alleging retaliation "for grievances." Id. Nor does plaintiff plead sufficient facts to establish a causal connection between the "grievances" and Officer Wright's misbehavior report. See Dawes, 239 F.3d at 492.

as it relates to plaintiff's allegation that defendant Wright filed a false misbehavior report against plaintiff in retaliation for plaintiff's exercise of his First Amendment rights.

### iii. Defendant Hodson

Plaintiff alleges that Officer Hodson issued him an administrative segregation report in retaliation for his engaging in constitutionally-protected conduct. Compl. ¶ 94; Dkt. No. 27, at 5. Plaintiff was placed in administrative segregation on December 13, 2012, and alleges to have received a report signed by Officer Hodson stating the reasons for being assigned such status. Compl. ¶¶ 93-94. The only other detail plaintiff provides about the report is that it references an alleged and unspecified threat that his mother made on Facebook, which he believes has a connection to Officer Dennis. Id. ¶ 94.

Plaintiff's allegation of retaliation is wholly conclusory and fails to allege that he was engaged in any protected conduct nor does it allege a causal connection between any protected conduct and the administrative segregation report. Further, plaintiff pleads no facts to explain any connection between Officer Dennis, the alleged Facebook threat by plaintiff's mother, and defendant Hodson's involvement in placing plaintiff in administrative segregation. Pleadings such as plaintiff's that are "unsupported, speculative, and conclusory . . . may be dismissed." Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997).

Accordingly, it is recommended that defendants' motion to dismiss be granted insofar as it relates to plaintiff's allegation that defendant Hodson issued an administrative segregation report against plaintiff with a retaliatory intent.

15

### iv. Defendant Chuttey

Plaintiff alleges that Officer Chuttey assigned plaintiff to administrative segregation in retaliation for his exercise of his First Amendment rights. Dkt. No. 27, at 5. Plaintiff's complaint fails to allege any facts regarding Officer Chuttey's assigning him to administrative segregation. Plaintiff references Officer Chuttey with regard to plaintiff's termination from his work program and his inability to call a witness at an administrative segregation hearing.[7] Compl. ¶¶ 61, 97. However, at no point does plaintiff provide that he was engaged in any specific protected conduct, and that defendant Chuttey retaliated against him for that conduct by placing him in administrative segregation. Thus plaintiff's complaint does not contain any factual allegations to support his conclusion that Officer Chuttey retaliated against him by placing him in administrative segregation for exercising his First Amendment rights.

Accordingly, it is recommended that defendants' motion to dismiss be granted insofar as it relates to plaintiff's allegation that defendant Chuttey assigned plaintiff to administrative segregation with the purpose of retaliation.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 22) be **DENIED** as to the First Amendment claims against defendant Vanderwerff; and that the motion otherwise be **GRANTED**, dismissing all claims against

---

[7] All due process claims against Officer Hodson were dismissed by this Court's December 24, 2014 Order. See Dkt. No. 5.

16

defendants Wright, Hodson, and Chuttey;[8] and it is

**ORDERED** that the Clerk of the Court serve this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**IT IS SO ORDERED**.

Date: October 29, 2015
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[8] Claims against defendant Dine remain, as Dine did not join in the motion to dismiss.