**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL JOSHUA HENDERSON ,**

                     **Plaintiff,**

  **vs.**                                        **9:13-cv-1537
(MAD/CFH)**

**LEBARTUS VANDERWERFF, et al.,**

                      **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**MICHAEL HENDERSON**
06-A-5461
Attica Correctional Facility
P.O. Box 149
Attica, New York 14011
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**       **RYAN E. MANLEY, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff *pro se* Michael Joshua Henderson commenced this action pursuant to 42 U.S.C.

Section 1983, alleging that Defendants, who at all relevant times were correctional officers at the

Auburn Correctional Facility ("Auburn C.F."), violated his rights under the First Amendment of

the Constitution.

On March 27, 2015, Defendants, excluding Defendant Dine, moved to dismiss Plaintiff's

complaint for failure to state a claim pursuant to the Rule 12(b)(6) of the Federal Rules of Civil

Procedure. Dkt. No. 22. On April 17, 2015, Plaintiff filed a response in opposition to Defendants' motion to dismiss. Dkt. No. 27.

Presently before the Court is Magistrate Judge Hummel's recommendation that Defendants' motion to dismiss be denied as to the First Amendment claims against Defendant Vanderwerff, and that the motion otherwise be granted, dismissing all claims against Defendants Wright, Hodson and Chuttey.

## II. BACKGROUND

The conduct giving rise to these claims occurred at Auburn C.F., where Plaintiff was an inmate. On March 22, 2012, Plaintiff filed a grievance against Officer Richardson for harassment and denial of food after Officer Richardson allegedly forced Plaintiff to abandon his breakfast and undergo a pat down and frisk, which did not reveal any contraband. *See* Dkt. No. 1-1 at 1-2.

On that same day, Plaintiff attended his work program at the law library, where he recounted his interaction with Officer Richardson to Officer Vanderwerff, the law library supervisor. *Id.* Plaintiff alleges that Officer Vanderwerff responded by saying, "Richardson, that's my boy." *Id.* Plaintiff also claims that Officer Vanderwerff offered to resolve the issue between Plaintiff and Officer Richardson and, in return, Plaintiff offered to withdraw the complaint. *Id.* However, Plaintiff's efforts to withdraw the complaint against Officer Richardson were unsuccessful. *Id.*

After the events of March 22, Plaintiff alleges that he was kept from his work program until March 29. *See id.* at 2. Upon his return to the law library, Plaintiff was allegedly instructed by Officer Vanderwerff to write a letter to the program committee requesting a thirty-day absence. *Id.* Officer Vanderwerff told Plaintiff that "[he] can't have [Plaintiff] working [in the

2

law library], Richardson is my boy and a lot of officers have a problem with [Plaintiff] now." *See id.* at 8 (internal quotation marks omitted). Plaintiff explained to Officer Richardson that he had a court deadline approaching, and that he "couldn't afford to take 30 days away from the law library." *Id.* Officer Vanderwerff offered to put Plaintiff on the "call out" so that Plaintiff could visit the legal library. *Id.* Plaintiff declined to write to the program committee requesting the leave of absence.

On May 14, 2012, Plaintiff alleges that he passed a urinalysis; however, later that day, Plaintiff learned that he was not permitted to go to work, and that marijuana was allegedly found in a coffee maker in the law library with a "snitch note" saying it belonged to Plaintiff. *See id.* at 18. Although Plaintiff did not receive a misbehavior report for the incident, he received a letter from Officer Chuttey notifying him that he was removed from his position at the law library for "security reasons." *See id.* at 19. Plaintiff requested clarification regarding the "security reasons" he was terminated for, but allegedly received no written response. *Id.* On May 31, 2012, Plaintiff alleges that Officer Chuttey told him in person that he wrote Plaintiff a response and that "if [the Plaintiff] didn't like it, then [he] shouldn't have filed a complaint against the defendant, Robin E. Richardson." *See id.* at 22.

Following Plaintiff's termination from his work program, Plaintiff also alleges that he received a false misbehavior report from Officer Wright, which contained a charge that was upheld for Plaintiff's violation of Rule 121.14, Inmates Shall Not Exchange Personal Identification Numbers. *See id.* at 28. Thereafter, Plaintiff was placed in administrative segregation and received a report from Officer Hodson detailing the reasons for his removal. *See id.* at 34. The report noted an alleged threat that Plaintiff's mother made on Facebook.

In the conclusion of the Report-Recommendation and Order dated October 29, 2015, Magistrate Judge Hummel recommended that the Court deny Defendants' motion to dismiss as to the First Amendment claims against Defendant Vanderwerff, and that the motion should otherwise be granted with respect to all claims against Defendants Wright, Hodson and Chuttey. *See* Dkt. No. 40 at 16-17. However, in the discussion, Magistrate Judge Hummel only recommended that Defendants' "motion to dismiss be granted insofar as it relates to plaintiff's allegation that Defendant Chuttey assigned plaintiff to administrative segregation with the purpose of retaliation." *Id.* at 16. Specifically, Magistrate Judge Hummel found that "plaintiff alleges detailed facts regarding interactions between himself and Officer Vanderwerff that raise questions of fact about plaintiff's job dismissal and its connection with a grievance filed against Officer Richardson." *See id.* at 12-13. Magistrate Judge Hummel recommended that the motion to dismiss be granted with respect to Defendant Wright because Plaintiff failed to establish a prima facie case of retaliation after admitting to the wrongdoing in Defendant Wright's misbehavior report. *See id.* at 14. Finally, Magistrate Judge Hummel found that Plaintiff's allegation of retaliation against Defendant Hodson was "wholly conclusory." *Id.* at 15.

Neither party objected to Magistrate Judge Hummel's Report-Recommendation

### III. DISCUSSION

**A.    Standard**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations

4

for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim on which relief can be granted. In order to state a sufficient claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

5

544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft* 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Despite this tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002).

**B.    First Amendment Retaliation**

Initially, the Court notes that prisoner claims for First Amendment retaliation are approached "with skepticism and particular care" because such claims are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001). To state a claim of First Amendment retaliation, the plaintiff must show that he engaged in constitutionally protected

6

speech or conduct, that the defendant took an adverse action against him, and that there is a causal connection between the two. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *Dawes*, 239 F.3d at 492. Lastly, even if the plaintiff alleges sufficient facts to demonstrate retaliation, the defendants may avoid liability if they demonstrate that they would have taken the adverse action "even in the absence of the protected conduct." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

### *1. Defendant Chuttey*

In the present matter, Magistrate Judge Hummel recommended that Plaintiff's claims against Defendant Chuttey be dismissed. Specifically, Magistrate Judge Hummel found the following:

> Plaintiff references Officer Chuttey with regard to plaintiff's termination from his work program and his inability to call a witness at an administrative segregation hearing. However, at no point does plaintiff provide that he was engaged in any specific protected conduct, and that defendant Chuttey retaliated against him for that conduct by placing him in administrative segregation. Thus plaintiff's complaint does not contain any factual allegations to support his conclusion that Officer Chuttey retaliated against him by placing him in administrative segregation for exercising his First Amendment rights.

*See* Dkt. No 40 at 16. Having reviewed the complaint, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff fails to plausibly allege that Defendant Chuttey placed him in administrative segregation in retaliation for exercising his First Amendment rights. However, Plaintiff's complaint plausibly alleges that Officer Chuttey was involved in the adverse action of terminating Plaintiff from his prison job in retaliation for his filing of the grievance against Officer Richardson.

The filing of a grievance by a prisoner against correction officers is conduct and speech that is constitutionally "protected by the First Amendment's guarantee of the rights to free speech

7

and to petition the government for a redress of grievances." *Coleman*, 636 F. Supp. 2d at 211; *see Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003). Therefore, prison officials "may not retaliate against prisoners for the exercise of that right." *See Franco v. Kelley*, 854 F.2d 584, 589 (2d Cir. 1988).

Here, Plaintiff contends that "over a span of ten months, plaintiff filed numerous grievance complaints alleging . . . harassment and retaliation by employees of Auburn Correctional Facility." *See* Dkt. No. 27 at 2. The initial grievance filed against Officer Richardson on March 22, 2012 is the protected conduct upon which a substantial part of Plaintiff's complaint centers. Accordingly, as the filing of a grievance is constitutionally-protected speech, Plaintiff has satisfied the first prong of a prima facie retaliation case.

The adverse action taken in retaliation against Plaintiff must be the type of action "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353 (quoting *Dawes*, 239 F.3d at 493); *Vega v. Artus*, 610 F. Supp. 2d 185, 206–07 (N.D.N.Y. 2009) (finding that adverse actions may include holding a plaintiff back from his or her prisoner work program); *see also Gill*, 389 F.3d at 381 (clarifying that adverse action in the prison context is defined objectively). The causal nexus between the protected speech or conduct and the retaliation must be specifically pleaded. *See Dolan v. Connolly*, No. 13 Civ. 5726, 2014 WL 1876524, *10 (S.D.N.Y. May 8, 2014), report and recommendation adopted by 2014 WL 3057973 (S.D.N.Y. June 27, 2014). The "allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Davis*, 320 F.3d at 354 (quoting *Dawes*, 239 F.3d at 492). Several factors have previously been used to evaluate whether a causal nexus has been sufficiently pleaded, which include the following: "'(1) the temporal proximity between the plaintiff's protected activity and

the defendant's adverse action, (2) the prior disciplinary records of the inmate, (3) the outcomes of any hearings regarding the allegedly retaliatory charges, and (4) any statements defendant makes concerning his motive.'" *Dolan*, 2014 WL 1876524, at *10 (quoting *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 444 (S.D.N.Y. 2006)); *see also Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). When a plaintiff alleges retaliatory adverse action by one officer for a grievance filed against another officer, the plaintiff faces a heightened burden of establishing a causal connection. *See Guillory v. Ellis*, No. 9:11-CV-600 (MAD/ATB), 2014 WL 4365274, *18 (N.D.N.Y. Aug. 29, 2014) ("[I]t is difficult to establish one defendant's retaliation for complaints against another defendant").

In addressing the second and third prongs, the Court finds that Plaintiff has alleged facts to identify specific, retaliatory actions of Defendant Chuttey, and a causal connection between Plaintiff's protected conduct and those actions. Plaintiff claims that he suffered an adverse action – the termination of his position as a clerk in the library – at the direction of Defendant Chuttey. Plaintiff alleges that he received a letter from Defendant Chuttey dated May 15, 2015 regarding the removal from his position for "security reasons." *See* Dkt. No 1 at ¶ 61. Despite his requests, Plaintiff was allegedly never provided a written explanation from Defendant Chuttey for his termination. *See id.* at ¶ 66. On May 31, 2012, approximately two months from the day Plaintiff filed a grievance against Officer Richardson, Plaintiff confronted Defendant Chuttey regarding the reasons he was removed from the law library. Plaintiff alleges that Defendant Chuttey allegedly replied that "if [plaintiff] didn't like it, then [plaintiff] shouldn't have filed a complaint against [Officer Richardson]." *Id.* at ¶ 66. Given Defendant Chuttey's alleged statements regarding his motive for terminating Plaintiff and the temporal proximity of Defendant Chuttey's comments to the filing of the grievance against Officer Richardson, Defendant Chuttey's reason

for terminating Plaintiff from his position was merely a pretext for retaliation. *See Dolan*, 2014 WL 1876524, at *10 (explaining that "specific statements" of a defendant's improper motive are sufficient to establish a causal connection); *Vega*, 610 F. Supp. 2d at 208 (holding that direct statements made by the defendant indicating his retaliatory motive were sufficient evidence of retaliation to withstand a motion for judgment on the pleadings); *see also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding that temporal proximity is established where the adverse action occurred six months after the protected conduct). As such, since Plaintiff was never disciplined in regard to the contraband incident which occurred just prior to his termination, and since the Court is unaware of the details of any non-retaliatory reason for terminating the Plaintiff, the Court finds that Defendants have not satisfied their burden of demonstrating that Plaintiff would have been terminated regardless of his protected conduct. *See Bennett*, 343 F.3d at 139; *McKethan v. New York State Dep't of Corr. Servs.*, No. 10 CIV. 3826, 2011 WL 4357375, *8 (S.D.N.Y. Sept. 16, 2011) (denying a motion to dismiss claims of retaliation where the defendant failed to put forth documentary evidence and affidavits detailing the reasons for the adverse action).

Based on the foregoing, the Court rejects the Report-Recommendation and Order insofar as it recommends granting Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim against Defendant Chuttey in relation to the termination from his job at the prison library.

### *2. Defendants Vanderwerff, Wright and Hodson*

Upon review of the Report-Recommendation and Order, and considering that the parties have failed to object to any of Magistrate Judge Hummel's thorough and well-reasoned recommendations, the Court finds no clear error in Magistrate Judge Hummel's recommendations as to the other named Defendants and hereby affirms and partially adopts the Report-

Recommendation and Order as the opinion of the Court. The Court finds that Magistrate Judge Hummel correctly recommended that the Court should deny Defendants' motion to dismiss as to Defendant Vanderwerff. Accepting the facts alleged in Plaintiff's complaint as true and construing them in the light most favorable to Plaintiff, the Court agrees with Magistrate Judge Hummel that Plaintiff has plausibly alleged that Defendant Vanderwerff's involvement in Plaintiff's termination from his prison job was in retaliation for Plaintiff's filing of a grievance against Officer Richardson.

As to the other named Defendants, the Court agrees that Defendants' motion to dismiss should be granted. A review of Plaintiff's complaint makes clear that his allegations against Defendant Hodson are entirely conclusory. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Plaintiff also fails to allege a plausible cause of action against Defendant Wright because Plaintiff admitted to committing the prohibited conduct detailed in the alleged false misbehavior report filed by Defendant Wright. *See Vega*, 610 F. Supp. 2d at 207 (citing *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994)) ("When it is undisputed that an inmate has in fact committed prohibited conduct, no retaliatory discipline claim can be sustained").

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order is **ADOPTED in part and REJECTED in part**; and the Court further

**ORDERS** that Defendants' motion to dismiss is **GRANTED in part and DENIED in part** as set forth herein; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 18, 2016
       Albany, New York

Mae A. D'Agostino
U.S. District Judge